**362 P.2d 788**

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**J. T. TRIMBLE, Defendant-Appellant.**

**No. 6855.**

Supreme Court of New Mexico.

June 13, 1961.

E. H. Williams, Jr., Las Cruces, for appellant.

Hilton A. Dickson, Jr., Atty. Gen., Carl P. Dunifon, Asst. Atty. Gen., Mark C. Reno, Asst. Atty. Gen., for appellee.

COMPTON, Chief Justice.

The defendant was convicted by a jury of Dona Ana County of the crime of incest, and he appeals from the judgment imposing sentence upon him. The appeal squarely presents the question whether evidence of the results of a polygraph test is admissible in evidence over objection.

Shortly after the commission of the alleged offense, the defendant voluntarily submitted to a polygraph test conducted by A. H. Hathaway. At the trial Hathaway was called as a witness. The defendant interposed an objection his evidence, nevertheless, the witness was permitted to testify as to the results of the test made by him.

Preliminarily, Hathaway testified that he had conducted approximately 3,000 poly-

graph tests and, of those found necessary to verify for accuracy, approximately 100, none were found to be wrong. From there the witness proceeded to fully explain to the jury the working of the machine and how it was attached to the person of the defendant. The witness further related to the jury a list of questions propounded by him to the defendant concerning the alleged offense and his answers thereto while undergoing the test. The witness then testified that the reaction of the machine indicated that the defendant had given false answers concerning his guilt, from which the witness concluded that the defendant was guilty of the crime charged.

Presently, the question requires a negative answer. In our research, we find no jurisdiction, possibly with one exception, People v. Kenny, 167 Misc. 51, 3 N.Y.S.2d 348, which admits evidence of the results of a polygraph test in either criminal or civil cases over objection. Even the Kenny case by sub silentio has apparently been overruled in that jurisdiction since in a subsequent case, People v. Forte, 279 N.Y. 204, 18 N.E.2d 31, 119 A.L.R. 1198, that court excluded the results of a polygraph test without noticing the Kenny case. So we think it can safely be said that the results of polygraph tests are uniformly excluded in all jurisdictions where an objection is timely made.

The question of admissibility of polygraph tests was first considered by the Federal courts in Frye v. United States, 54 App. D.C. 46, 293 F. 1013, 1014, 34 A.L.R. 145. The reasons given for the refusal of such evidence was so cogently stated by the court that we quote with approval the language there employed as follows:

"* * * Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

"We think the systolic blood pressure deception test has not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made."

Cases following the rule thus announced in the Frye case are numerous. Most of them are collected at 34 A.L.R. 147; 86 A.L.R. 616; 119 A.L.R. 1200; 139 A.L.R. 1174; and 23 A.L.R.2d 1306. See Marks v. United States, 10 Cir., 260 F.2d 377; Brooke

v. People, 139 Colo. 388, 339 P.2d 993. Also compare our own cases, State v. Lindemuth, 56 N.M. 257, 243 P.2d 325 and State v. Varos, 69 N.M. ——, 363 P.2d 629.

But the state argues that no proper objection was made to the introduction of the evidence relating to results of the polygraph test. The record dispels this argument. When Hathaway was first called as a witness, the admissibility of his evidence as to the results of the polygraph test was brought clearly to the court's attention. The appellant cited various cases in support of his objection. When the evidence was thus challenged, the court then stated, " * * * According to Underhill in the last 56 Edition of it, the Universal Rule, almost without exception * * * holds that the results are not admissible in evidence." In response to the remarks of the court, the district attorney replied, " * * * that is correct, but if there is a statement signed by the defendant that he agrees to take a lie detector test, that it may be used in evidence against him * * *." The court thereupon concluded that since the defendant had signed a waiver agreeing to be bound by the results of the test, the evidence of Hathaway was admissible. We

think the court was led into error. The signing of a waiver did not alter the rule with regard to the admissibility of Hathaway's evidence. Le Fevre v. State, 242 Wis. 416, 8 N.W.2d 288; Marks v. United States, supra; Colbert v. Commonwealth, Ky., 306 S.W.2d 825, 71 A.L.R.2d 442.

The state argues that there was adequate evidence of a substantial nature aside from the results of the test to support the verdict and that the evidence relating to the test was merely cumulative. This argument does not appeal to us. While we have no way of knowing whether the verdict of the jury stems from the test, it may have been the deciding factor in the case. The record discloses that at least one juror made inquiry of the witness concerning the machine and its operation. It would be difficult to believe that this inquiry was an idle gesture of the juror.

The judgment should be reversed and the defendant granted a new trial.

It is so ordered.

CARMODY and MOISE, JJ., concur.

CHAVEZ and NOBLE, JJ., not participating.